UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEVEN MARQUEZ,<br><br>Defendant. | No. AU:22-CR-00260(1)-RP |

## UNITED STATES' SENTENCING MEMORANDUM

Defendant Steven Marquez embezzled over $700,000 from his employer over the course of seven years. Marquez also filed false tax returns that failed to report his embezzlement income, resulting in a tax loss to the government of $188,493. The United States recommends this Court sentence Marquez to a term of imprisonment of 30 months, followed by a term of supervised release. Such a sentence is sufficient, but not greater than necessary, to reflect the gravity of Marquez's illegal conduct, justly punish him, and deter him and others from engaging in similar conduct. The United States also requests this Court order Marquez to pay restitution to his former employer ("Company 1") in the amount of $11,319; Chubb Forefront Portfolio 3.0 Policy in the amount of $692,493, and the Internal Revenue Service in the amount of $188,493.

### I.   BACKGROUND

**A.  Marquez Embezzled over $700,000 from his Employer.**

Marquez was hired by Company 1, a property management company, in 2007. (PSR ¶5.) Although his responsibilities varied, Marquez worked for Company 1 as a "cash manager" at all times relevant to the crimes he committed. (PSR ¶5.) In 2010, Marquez took over Company 1's bank reconciliation team. (PSR ¶9.) As a part of his managerial duties, he was authorized to

1

approve wire transfers among various bank accounts Company 1 controlled on behalf of its clients. (PSR ¶ 9.) Marquez took advantage of this to steal from his employer and transferred hundreds of thousands of dollars to an account he controlled, which he thereafter used to pay for various personal expenses. (PSR ¶¶ 10-14.) While the charges in the Information pertain to conduct that occurred in 2017, from 2010 to 2017 Marquez embezzled $704,262. (*Id.*)

### B. Marquez's Concealment of His Embezzlement.

Marquez and several other individuals formed a limited liability company named "4 Points Group" or "4PG" in or about January of 2007. (PSR ¶6.) On or about April 5, 2007, Marquez opened a checking account in the name of "4 Points Group LLC" at Wells Fargo Bank. (PSR ¶8.) While there were other owners of the account, Marquez was the only authorized signer. (*Id.*) Shortly after 4PG was organized, Marquez's partners ceased their involvement with the company. (PSR ¶6.) Marquez, however, continued to maintain control over 4PG's bank account. (PSR ¶6.)

Marquez caused approximately two hundred wire transfers from Company 1's accounts to the 4PG account, and from there used the funds for his personal benefit. (PSR ¶12.) Specifically, after the money posted to his 4PG bank account, Marquez would 1) transfer the funds to his personal bank accounts, 2) pay personal credit card bills; 3) pay for personal expenses using debit cards, 4) withdraw cash from ATMs, or 5) transfer funds to a business he owned (SMARQ 2015, LLC). (PSR ¶10.)

To conceal his embezzlement, Marquez altered copies of Company 1's bank records. He would email electronic versions of Company 1's bank statements to his personal email account, and alter the bank statements to delete his transfers to 4PG to make the bank statements appear to reconcile with Company 1's accounting records. (PSR ¶11.) He would then provide the altered statements to Company 1's bank reconciliation group. (PSR ¶11.) Indeed, Marquez's efforts to

conceal the transfers worked for many years. Company 1 only discovered Marquez's fraud by chance: a Company 1 employee selected some wire transfers to use as examples during a training session, and noticed that they could not be reconciled with the company's books and records. (PSR ¶11.)

Finally, Marquez failed to report as income on his tax returns the funds he embezzled from Company 1 from 2010 through 2017. (PSR ¶13.) For example, on his 2017 Form 1040, the false return charged in the Information, Marquez reported on Line 43 approximately $107,892 in taxable income, whereas he knew that the correct taxable income was $275,320. (PSR ¶13.) Marquez similarly failed to report as income the money he embezzled during other years, causing the following tax losses:

| Tax Year | Tax Due and Owing |
|---|---|
| 2010 | $10,611 |
| 2011 | $9,068 |
| 2012 | $14,976 |
| 2013 | $18,165 |
| 2014 | $28,103 |
| 2015 | $25,271 |
| 2016 | $38,271 |
| 2017 | $44,028 |
| **Total:** | $188,493 |

## II.   PROCEDURAL HISTORY

On December 5, 2022, Marquez was charged in a two-count Information with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of filing a false tax return, in violation

of 26 U.S.C. § 7206(1). (Doc. No. 1.) Marquez pleaded guilty to both counts on December 19, 2022. This Court accepted Marquez's guilty plea on January 18, 2023. (Doc. No. 14.)

### III. GUIDELINES CALCULATION AND RECOMMENDED SENTENCE

#### A. Guidelines Calculation

The Guidelines are "the starting point and the initial benchmark" for sentencing and are designed to aid district courts in determining a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). They are, however, only advisory. If a district court "decides that an outside-Guidelines sentence is warranted," the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50.

The parties agree with the PSR's calculation of Marquez's guidelines as follows:

| Offense Level | | |
|---|---|---|
| **Description** | **USSG §** | **Level** |
| Base Offense Level | USSG §2B1.1(a)(1) | 7 |
| Specific Offense Characteristics | USSG § 2B1.1(b)(1)(H) | +14 |
| Acceptance of Responsibility (General) | USSG §3E1.1(a) | -2 |
| Acceptance of Responsibility (Timely Notification) | USSG §3E1.1(b) | -1 |
| Total: | - | 18 |

In addition, Marquez has a criminal history category of II. (PSR ¶¶35-37.) As the Probation Office notes, Marquez conducted a number of transactions related to Count 1, the wire fraud charge in this case, while under a term of state probation. (Addendum to the Presentence Report, p. 1A.) The United States agrees with the Probation Office's evaluation of the criminal history category.

#### B. Recommended Sentence

Based on an offense level of 18 and a criminal history category of II, the Guidelines imprisonment range is 30 months to 37 months. Without that criminal history category, the Guidelines range would be 27 months to 33 months. For the reasons set forth below, the

government respectfully submits that Marquez's conduct warrants a term of imprisonment of 30 months, which is within the Guidelines range regardless of the criminal history category.

**IV.     ARGUMENT - 18 U.S.C. § 3553(a) FACTORS**

After calculating the Guidelines range, a sentencing judge must weigh the factors set forth in 18 U.S.C. § 3553(a) and fashion a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).  The factors set forth in 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar crimes; and (7) the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a).  The factors most relevant to this case are discussed below.

**A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

Marquez's conduct was not confined to a single, isolated event, or a single tax year. Marquez, a "cash manager," began embezzling from his employer the same year he took over its bank reconciliation team, and caused approximately two hundred wire transfers from Company 1's accounts to his 4PG account over the course of seven years.  (PSR ¶12.)  He used his position to benefit himself: in 2017 alone, Marquez stole $165,000.  (PSR ¶12.)  He then failed to pay taxes on the money he stole each year from 2010 through 2017.  Marquez caused considerable harm to

5

his former employer and to the Treasury; the total loss associated with Marquez's criminal conduct is $892,755. (PSR ¶2.)

Marquez's Guidelines range credits him for accepting responsibility for his actions, and nothing in Marquez's history or characteristics counsels against a Guidelines sentence. As the Seventh Circuit has noted, "[c]riminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999). Marquez reported no significant issues growing up, and reports that he has no history of treatment for substance abuse. (PSR ¶42, ¶48.) Nevertheless, he chose to defraud the United States Treasury and his former employer for approximately seven years.

### B. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment.

Here, Marquez stole hundreds of thousands of dollars from his employer, altered documents to conceal his theft, and filed false tax returns that failed to report his embezzlement income. The Sentencing Commission commented in Chapter 2T that "[t]ax offenses, in and of themselves, are serious offenses." USSG § 2T1.1, comment (backg'd). Tax crimes are serious because they harm every honest, taxpaying citizen. A 30-month term of imprisonment will reflect the seriousness of Marquez's offense, promote respect for the law, and provide just punishment.

### C. The Need to Protect the Public from Further Crimes of the Defendant, and the Need for General Deterrence.

It is important to specifically deter Marquez from engaging in further acts of fraud. Marquez reported to the Probation Office that he is self-employed at an entity called "Cash Flow Pros" where he earns a gross monthly income between $12,000 and $16,000. (PSR ¶50.) He described this business to Probation as a "financial and accounting business," which he owns. (*Id*.)

Marquez stated that the business began on or about January 1, 2018. (*Id.*) But Marquez did not report to the Internal Revenue Service income from that company for several years. In fact, although he made some estimated tax payments, he only recently filed tax returns for 2020 and 2021, after counsel for the United States submitted a letter to the Probation Office in May of 2023.

General deterrence is similarly crucial for white collar offenses like this one. "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006); *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2012) ("general deterrence is an important factor in white-collar cases, where the motivation is greed"). For years, Marquez engaged in a scheme to enrich himself by stealing from his employer and cheating the Internal Revenue Service. A Guidelines sentence of 30 months will send a clear message that those who choose to commit economic crimes will have serious consequences.

V.     **RESTITUTION**

The Court should order Marquez to pay restitution, to which Marquez agreed in his plea agreement. Specifically, the United States requests the Court order Marquez to pay restitution to Company 1 in the amount of $11,319; Chubb Forefront Portfolio 3.0 Policy in the amount of $692,493, and the Internal Revenue Service in the amount of $188,493.[1]

---

[1] Pursuant to 18 U.S.C. § 3664(i), the United States submits that Chubb Forefront Portfolio 3.0 Policy should be paid before the Internal Revenue Service.

## VI. CONCLUSION

The United States requests this Court to sentence Marquez to a term of imprisonment of 30 months followed by a term of supervised release, and order Marquez to pay restitution as set forth above.

                                        JAMIE ESPARZA
                                        UNITED STATES ATTORNEY

                                        /s/Kavitha Bondada
                                        DAVID ZISSERSON
                                        Assistant Chief
                                        KAVITHA BONDADA
                                        Trial Attorney
                                        United States Department of Justice, Tax Division
                                        150 M Street N.E.
                                        4 Constitution Square
                                        Washington, D.C. 20002

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to all counsel of record.

/s/Kavitha Bondada
KAVITHA BONDADA